UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

J.L. AND C.L., INDIVIDUALLY AND ON BEHALF OF THEIR CHILD, A.L.,

Plaintiffs,

- against -

THE CITY OF NEW YORK, *et al.*,

Defendants.

**MEMORANDUM DECISION AND ORDER**

26-cv-413 (BMC)

**COGAN**, District Judge.

Plaintiffs have moved for summary judgment and defendants have moved for judgment on the pleadings in this Individuals with Disabilities Education Act ("IDEA") case, in which plaintiffs seek reimbursement for their unilateral educational placement for the 2024-25 school year. An impartial hearing officer ("IHO") and state review officer ("SRO") have considered the issues now raised here, and the SRO awarded plaintiffs 50 percent of the reimbursement they seek. The parties each challenge that award for different reasons. The Court has reviewed the administrative record and finds that the SRO's decision was the right one. Thus, plaintiffs' motion is denied, and defendants' motion is granted in part and denied in part.

## BACKGROUND

### I. A.L.'s Education and Evaluation History

A.L. is a 12-year-old student in New York. She has diagnoses of autism, attention deficit hyperactivity disorder ("ADHD"), and some specific learning disorders. In October 2019, a Committee on Special Education ("CSE")[1] recommended a nonpublic school placement for A.L.

[1] "In New York, the state has assigned responsibility for developing [individualized education programs ("IEP")] to local Committees on Special Education[.]" R.E. v. New York City Dep't of Educ., 694 F.3d 167, 175 (2d Cir.

A.L. also had a neuropsychological evaluation conducted in 2019. A.L.'s parents could not find an appropriate nonpublic school at the time, and she was homeschooled during the COVID pandemic.

Beginning in October 2022, plaintiffs began requesting that the CSE reevaluate A.L. and provide a new neuropsychological evaluation. Plaintiffs made this request several times. In May 2023, they also asked the CSE to recommend a nonpublic school placement for A.L. prior to the 2023-24 school year.

The CSE did not convene until December 2023, at which time the CSE found A.L. eligible for special education as a student with autism. The CSE developed an individualized education services plan ("IESP") for her, which is functionally equivalent to an IEP under the IDEA. See N.Y. Educ. Law § 3602-c.

In March 2024, plaintiffs again requested a new neuropsychological evaluation of A.L., this time asking that it be completed prior to the end of the 2023-24 school year so that they could find an appropriate nonpublic school placement for the 2024-25 school year. In May 2024, the school district requested that plaintiffs consent to A.L.'s reevaluation. The district explained that the neurological assessment still needed to be approved, but in the meantime, the district could conduct a psychoeducational evaluation and a social history update "to avoid delays."

Throughout May and June 2024, plaintiffs and the district continued to exchange emails about A.L.'s evaluations, including the requested neuropsychological evaluation. Also during this period, plaintiffs failed to bring A.L. to multiple appointments scheduled for the purpose of

---

2012). A CSE generally includes the parents, a regular education teacher (as applicable), a special education teacher, a school psychologist, a representative of the school district, a school physician, an additional parent of a student with a disability, and, as appropriate, the student. N.Y. Educ. Law § 4402(1)(b)(1)(a).

completing the aforementioned evaluations and filed a due process complaint notice. In July 2024, as part of the impartial hearing on that complaint, an IHO issued an interim order directing the district to fund independent neuropsychological, OT, speech-language, and assistive technology evaluations. Those evaluations were conducted in late summer and fall of 2024. The neuropsychological evaluation was completed in November 2024.

In August 2024, plaintiffs advised the district that A.L. would be unilaterally placed at Winston Preparatory School ("Winston Prep") for the 2024-25 school year. Tuition at Winston Prep cost $79,900 for the year. A.L. began attending fifth grade at Winston Prep in September 2024.

A couple weeks after A.L. started school at Winston Prep, her parents filed another due process complaint notice alleging that the district had denied A.L. a free appropriate public education ("FAPE") for the 2024-25 school year. The complaint cited the district's failure to conduct an appropriate and timely reevaluation of the student despite numerous requests. Plaintiffs sought a determination that Winston Prep was an appropriate unilateral placement for A.L., an award of tuition or reimbursement for the cost of Winston Prep, and reimbursement or direct funding for transportation services.

In response, the district stated that the CSE had been trying to reach plaintiffs to obtain consent for the requested assessments via email, phone calls, and mail and that they had not responded to any of those attempts. On the same day it responded to plaintiffs' latest due process complaint notice, the district sent a prior written notice stating that A.L.'s case would be closed because of plaintiffs' refusal to consent to the evaluations.

## II. <u>The IHO Decision</u>

Plaintiffs' due process complaint regarding the 2024-25 school year was heard before an

IHO beginning in December 2024. The hearing concluded in March 2025, and the IHO issued a written decision in June 2025.

The IHO found that the district denied A.L. a FAPE for the 2024-25 school year. However, he denied plaintiffs' request that the district fund the cost of tuition at Winston Prep for the 2024-25 school year because he found that Winston Prep was an inappropriate placement. Specifically, Winston Prep did not offer services that had been recommended in private evaluations of A.L., including speech-language therapy, occupational therapy, and applied behavior analysis. The IHO further found that, if plaintiffs had prevailed, equitable considerations would have favored an award of 50 percent of their requested relief due to their failure to consent to the district's proposed evaluations. However, the parents' failure to consent to the reevaluations did not negate the district's obligation to provide A.L. with a FAPE.

## III. <u>The SRO Decision</u>

Plaintiffs appealed the IHO's decisions that (1) Winston Prep was an inappropriate unilateral placement and (2) they were uncooperative with the district's attempts to reevaluate A.L. The district cross-appealed the portion of the IHO's decision finding that equitable considerations precluded only 50 percent of the relief.

On whether Winston Prep was an appropriate unilateral placement, plaintiffs argued that Winston Prep addressed A.L.'s needs as demonstrated by her progress reports, notwithstanding the lack of occupational and speech-language therapy services. The district argued that the progress reports were insufficient to overcome the fact that Winston Prep did not provide the specific services that A.L. needed. The district further argued that equitable considerations should have precluded all relief, particularly because plaintiffs gave the district less than ten days' notice prior to A.L. starting at Winston Prep.

The SRO, in a written decision in April 2026, sustained plaintiffs' appeal in part and dismissed defendants' cross-appeal. The SRO found that Winston Prep's programming included "language-based instruction; a one-to-one daily Focus class targeting executive functioning, language, and self-regulation needs; homogenous grouping by disability/deficit profile; and multisensory explicit teaching tied to documented deficits." She held that such programming was "aligned to the student's needs." She also found that A.L. "demonstrated … meaningful progress academically in all her core subjects as well as in the social and emotional realms" at Winston Prep, and this too was a "relevant factor to be considered in assessing the appropriateness of a unilateral placement." She also noted that A.L.'s parents may not have had all "evaluation reports at the time of their placement decision such that they should be required to prove that their unilateral placement aligned with the recommendations set forth in the evaluations." (At the very least, A.L.'s latest round of evaluations continued into the fall of 2024, after she had already started at Winston Prep.) In summary, the SRO held that the "totality of the circumstances supports a finding that Winston Prep was an appropriate unilateral placement for the 2024-25 school year."

On the equitable considerations, the SRO upheld the IHO's finding that a 50 percent reduction was appropriate in light of plaintiffs' lack of cooperation but rejected the district's argument that late notice justified a further reduction in reimbursement.

## LEGAL STANDARD

Under the IDEA, "states receiving federal special education funding are required to provide free appropriate public education (a 'FAPE') to children with disabilities." A.H. v. N.Y.C. Dep't of Educ., No. 24-cv-4828, 2025 WL 2773252, at *1 (S.D.N.Y. Sept. 29, 2025). "To provide a FAPE to each student with a disability, a school district must develop an [individualized education program ("IEP")] that is 'reasonably calculated to enable the child to

receive educational benefits.'" Ventura de Paulino v. N.Y.C. Dep't of Educ., 959 F.3d 519, 525 (2d Cir. 2020) (quoting T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151 (2d Cir. 2014)). When parents challenge an IEP and unilaterally place their child in private school, the Burlington/Carter test determines whether tuition reimbursement is appropriate. See Burlington v. Dep't of Educ., 471 U.S. 359 (1985); Florence Sch. Dist. Four v. Carter, 510 U.S. 7 (1993). The Burlington/Carter test has three steps: (1) defendants must establish that the student's IEP provided a FAPE; (2) if the student was not provided a FAPE, the parents must establish that their unilateral placement was appropriate; and (3) the parents must establish that the equities favor them. M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013).

In terms of the scope of the Court's review, "[w]hen a party challenges an SRO decision, 'the district court shall receive the records of the administrative proceedings … and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" M.M. v N.Y.C. Dep't of Educ., No. 21-cv-3693, 2024 WL 3904771, at *3 (E.D.N.Y. Aug. 22, 2024) (quoting 20 U.S.C. § 1415(i)(2)). "Such review, however, 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'" A.K. v. Westhampton Beach Sch. Dist., No. 17-cv-866, 2021 WL 6776236, at *11 (E.D.N.Y. Dec. 22, 2021) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206 (1982)), aff'd sub nom., Killoran v. Westhampton Beach Sch. Dist., No. 22-204, 2023 WL 4503278 (2d Cir. July 13, 2023). "To the contrary, federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational

policy.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 113 (2d Cir. 2007) (quoting Rowley, 458 U.S. at 206, 208)).

**DISCUSSION**

The parties both challenge the SRO's findings that the equities favor reducing the tuition reimbursement by 50 percent. Of course, plaintiffs believe they are entitled to 100 percent reimbursement, and the district believes plaintiffs are entitled to no reimbursement.

Plaintiffs' principal argument is that the IHO and the SRO improperly regarded their exercise of their due process rights as a refusal to have A.L. reevaluated, and once plaintiffs' actions are viewed as legitimate exercises of due process rights, the equities weigh in favor of full reimbursement. Defendants counter that the Court should find that no tuition reimbursement is due to plaintiffs because (1) Winston Prep was an inappropriate placement and (2) plaintiffs' failure to cooperate regarding the relevant evaluations was unjustified.[2]

First, the Court declines to disturb the SRO's decision that Winston Prep was an appropriate placement. Steps one and two of the Burlington/Carter test involve "specialized knowledge" and "persistent and difficult questions of educational policy," Ferreira v. Aviles-Ramos, 120 F.4th 323, 330 (2d Cir. 2024), which IHOs and SROs are better suited to address than this Court. The parties agree that Winston Prep did not provide A.L. with the exact services that her evaluators recommended for her (*i.e.*, speech language therapy, occupational therapy, applied behavior analysis, and behavior intervention plans). But the SRO nevertheless found that Winston Prep met A.L.'s needs because its programming included "language-based instruction; a one-to-one daily Focus class targeting executive functioning, language, and self-regulation needs; homogenous grouping by disability/deficit profile; and multisensory explicit

[2] Defendants do not challenge the first prong of the Burlington/Carter test, *i.e.*, that the district did not provide A.L. with a FAPE for the 2024-25 school year.

teaching tied to documented deficits." The SRO thus concluded that Winston Prep was an appropriate placement for A.L. Based on the Court's review of the record, that finding was supported by evidence of A.L.'s progress at Winston Prep during the 2024-25 school year, notwithstanding the fact that certain therapies were not part of the program. See Gagliardo, 489 F.3d at 115 (explaining that progress "is relevant to the court's review," though not dispositive on its own).

To urge the Court to depart from the SRO's reasoning, defendants principally rely on Gagliardo, in which the Second Circuit reversed a district court's finding that a private school was an appropriate placement. The Gagliardo court warned courts in this Circuit that they "should not disturb a state's denial of IDEA reimbursement where … the chief benefits of the chosen school are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not." Id. In Gagliardo, the Second Circuit was reviewing a district court's decision that had disturbed an IHO's finding, not a district court that had given "due weight" to the state's superior ability to resolve questions of educational policy. It was specifically in that context that the Second Circuit warned courts not to overstep in this realm. Here, the SRO – who is well-qualified to assess the appropriateness of Winston Prep in the context of A.L.'s needs – found that the placement was appropriate, and the Court sees no reason to disturb that finding. Additionally, the services provided by Winston Prep are not "amenities that might be preferred by parents of any child, disabled or not." Winston Prep is designed specifically for students with learning disabilities.

Second, the Court likewise agrees with the SRO's decision on the equitable considerations. The Court affords less deference to the SRO on this issue. Unlike the first two steps of the Burlington/Carter test, weighing the equities is "an exercise of judgment that falls

squarely within federal courts' expertise." Ferreira, 120 F.4th at 332. To review the SRO's equitable balancing, the Court must "(1) engage in an independent review of the administrative record, and (2) make a determination of the balance of the equities based on a preponderance of the evidence." K.S. v. Harrison Cent. Sch. Dist., No. 24-cv-6318, 2025 WL 3442916, at *32 (S.D.N.Y. Dec. 1, 2025) (quoting Ferreira, 120 F.4th at 333).

The Court finds, like the IHO and the SRO both found, that plaintiffs failed to cooperate with the district's attempt to reevaluate A.L. Plaintiffs failed to bring A.L. to multiple appointments related to the reevaluations, failed to provide their consent for the reevaluations, and have not provided any satisfactory explanation for such refusals to cooperate. This "supports an equitable reduction in the reimbursement." Maysonet v. N.Y.C. Dep't of Educ., No. 22-cv-1685, 2023 WL 2537851, at *4 (S.D.N.Y. March 16, 2023) (collecting cases and explaining that uncooperative behavior by parents supports equitable reduction). The statutory language of the IDEA allows reimbursement to be reduced or denied when parents act unreasonably. See 20 U.S.C. § 1412(a)(10)(C)(iii) ("The cost of reimbursement … may be reduced or denied … upon a judicial finding of unreasonableness with respect to actions taken by the parents."); 34 C.F.R. § 300.148(d) (same); see also C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 840 (2d Cir. 2014) ("Important to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA.").

Plaintiffs argue that the IHO and the SRO put too much emphasis on their failure to cooperate and not enough emphasis on defendants' "prolonged and protracted failure to engage mandated evaluations." Under the Burlington/Carter test, it is plaintiffs' burden to show that the equities weigh in their favor. See R.E., 694 F.3d at 185 ("[T]he parents bear the burden of

establishing the appropriateness of their private placement and that the equities favor them."). Two wrongs do not make a right. Although plaintiffs were surely frustrated that the district failed to reevaluate A.L. before May 2024, especially considering their prior requests for a reevaluation, that frustration did not give them license to refuse to cooperate. Plaintiffs make no attempt to explain to this Court the failures to bring A.L. to appointments and provide consent. At the hearing before the IHO, plaintiff J.L. testified that she did not bring A.L. to an appointment on May 11, 2024 because A.L. was sick. But now, plaintiffs seek only to emphasize their due process proceedings and ignore their failures to cooperate in the process that they so desperately wanted the district to undertake. The fact that plaintiffs sought a due process hearing while failing to cooperate with the reevaluations does not excuse the failure to cooperate.[3]

Even if the IHO and the SRO inadequately considered the district's prior failures, this Court has considered them. Because the Court finds that plaintiffs contributed to the district's failure to provide A.L. with a FAPE in the 2024-25 school year, the Court believes a 50 percent reimbursement for Winston Prep is appropriate. See Z.A.R. v. City of New York, No. 19-cv-2615, 2022 WL 4536241, at *7 (E.D.N.Y. Sept. 27, 2022) (finding that plaintiff was "unreasonable in failing to make [her child] available for reevaluation, and thus, the equities [did] not favor full tuition reimbursement").

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment [38] is denied, and defendants' motion for judgment on the pleadings [33] is granted in part and denied in part.

---

[3] Plaintiffs suggest that the SRO improperly considered their due process complaints as weighing against them in the equities balancing. The SRO did not hold plaintiffs' exercise of their due process rights against them; rather, she properly held, as the Court now holds, that plaintiffs' vindication of their due process rights did not excuse their failure to cooperate in A.L.'s reevaluations.

Plaintiffs' motion filed at [35] is denied as moot because plaintiffs refiled at [38].

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
October 30, 2026